v. Wells Fargo Bank, N.A., et a v. Wells Fargo Bank, N.A., et a v. Wells Fargo Bank, N.A., et a This is not an exemplary damage case. As the Court's aware, an exemplary damage case in this state requires a very onerous standard. You would have to have found that Wells Fargo acted callously or with indifference toward the plaintiff, that the harm claimed was extraordinary, and that the plaintiff suffered either extreme physical harm or financial ruin. None of those are present. In fact, no damages at all should have been awarded. If the Court recalls and looks at the actual jury verdict, the question was asked, what sum of money, if any, and I'm paraphrasing, would have been recovered in the underlying, what's been referred to as the house trust suit? And the jury answered, zero damages. It's interesting because in that predicate question, the burden was actually shifted to Wells Fargo improperly. And I'm somewhat of a quagmire because even though that shift was improper, which should result in a reversal, a subsequent question, which was predicated on that shift, had a clear and convincing standard. And the jury still found, even on a clear and convincing standard, that there was either some sort of malicious or callous conduct. Do you have any... I understand, of course, that you disagree with that. I mean, do you have any guess as to what happened that would have caused the jury to come out with that kind of decision? Yes, Your Honor. I'm sorry. Go ahead. I do, and it's set forth in our brief. Basically what happened is at the last minute, after having been denied a right to amend their pleadings and after being expressly instructed, we are trying this case on a very narrow issue, which is, was the non-suit improper? The plaintiff was allowed to raise a new issue, which was the non-suit either improper or filed too late. And that was basically a tells-you-when and a heads-I-lose argument because one of the two things would have occurred based upon their theory. We didn't weigh that theory because no evidence, and the court itself found we kept it narrowly to the narrow issue. No evidence which was admitted was not also related to the... It's also interesting that the only two damages awarded were disgorgement and fees associated with the cost in the underlying house trust lawsuit. Neither of those damages could support an exemplary damage award for multiple reasons. First, the disgorgement fees, which were some $3,000 and change, were related to fees that were proper, and disgorgement is an equitable remedy. And you have to show that the bank in this instance, the trustee, did something inequitable. It actually profited. And there's no question that that did not occur. Second, the fees in the underlying lawsuit were incurred years before the actual non-suit. And so if that was improper, if the case should have been non-suited earlier, then the case would have been barred by limitations. And, in fact, summary judgment was granted on all claims but for the non-suit itself. So that can't support the damages awarded in this case. The burden was shifted because of a claim that there was some sort of self-dealing. And Mr. Jones has claimed self-dealing against trustees in the past. In the N. Ray Boyle case, which we've cited, Mr. Jones said there was self-dealing because the bank dealt with others. Are we entitled to even consider what happened in other proceedings? You are because there's two standards here. We set those forth on page 16, I believe, of our brief. The first is the motion for J&OB basically, and I realize I'm in federal court, but for simplicity, and that is a question of law. The second was whether or not the damages awarded are proper, and because it's the owner's standard of exemplary damages, you have to look at all evidence. And then you'll be able to determine whether the jury could reach the verdict that it reached. I want to go back and get some of the underlying facts because they relate directly to the exemplary damage claim. Let me ask you on the self-dealing, though. If we accept, and I understand you object to the idea of the non-suit's either too late or too soon or whatever it was, but if we accept that as the question, then isn't the self-dealing you're running up fees for yourself? Well, the fees aren't for ourself. In fact, it's interesting, Judge Haynes, because if you recall what occurred, and that's where I was getting to some of the facts, was Chase itself, which was the predecessor trustee, filed the suit at the very last minute based upon a request by plaintiff's counsel saying limitations are about to run, you need to file a suit. They file a suit. Wells Fargo becomes successor trustee. Wells Fargo actually says, look, there's not enough assets left in this house trust to warrant our serving as trustee. We're willing to terminate the trust, which would give Mr. Jones full ability to do with the suit and anything else he wanted. He opposed the termination. So Wells Fargo wasn't trying to self-deal. It wasn't trying to increase its fees. Okay, but that's factual like what they want to do. I mean, what I'm saying is that's the argument for posturing the – and I will tell you, I mean, as a state judge in Texas, I presided over a lot of breach of fiduciary. They all shifted the burden. It wasn't very hard to do that. So I don't think it's very – it's not uncommon to shift the burden the way this question was. In fact, this is the more common, in my experience, way to present it in Texas state court, for what little that may be worth. Sorry, I didn't mean to interrupt the court, but you still have to have self-dealing, which requires some sort of benefit to Wells Fargo. There was no benefit. They did not receive any fees. That's what you're saying. They actually did receive fees up until the point, and the record confirms, that the trust assets became de minimis and it actually stopped collecting fees. Okay. But that's not directly related to the failure to non-sue, which was the only claim that was supposed to have been tried, because those fees were incurred years past. So if the court were to determine, Judge Haynes, as your question suggests, that, okay, it could have been a viable cause of action. It should have non-suited years earlier. Then that claim would have been barred by limitations, and Wells Fargo would have had an opportunity to have asserted a limitations defense, which it did to all claims. And recall, all but this one very narrow claim were dismissed on summary judgment. Had that occurred, there could be no damages. And let's take the next step, the next part of the syllogism. Let's assume that even you could get some sort of a reward. This is still not a punitive damage case because you have to look at it. There is a subjective prong and an objective prong. Let's take each of those in seriatim. So the subjective prong is Wells Fargo had to have known that there was the possibility for significant harm to the plaintiff by its actions. Significant harm can occur in one of two ways, physical injury, which is not present, or financial ruin. There was no possibility of financial ruin in this case. And we've cited numerous cases where the court has determined. Is that the prong? I mean, the thing that I – this is Judge Gottabe, who was a state court judge in Texas and dealt with these cases and has been a federal court judge in Texas for many, many years. He's well aware of the limited, you know, nature of exemplary damages. What basis did he give in any of y'all's discussions about jury charge or whatever for submitting this? I can't cite to the record page, but it is actually cited in our brief. And if you'll recall, the trial court judge actually said, I've got some real concerns about this. And he carried forward the motion, which I think was proper, because why waste a week of trial when you can later dismiss it. No, I get that. But then after the jury – I mean, he still entered judgment on it or he wouldn't be appealing it. And so it just is – I feel like I'm missing a line here about what he was thinking. And, Your Honor, I would be speculating if I told you what the court was thinking. But I can tell you that the jury itself had to have speculated. And it has to be – there has to be a quantum leap in what occurred versus the evidence that was presented. Because first of all, the second prong, I talked about the subjective prong. Let's talk about the objective prong. You have to have some callous indifference to your conduct. You have to say, I've thought about it. There's some potential for some real damage here, but I don't care. I just don't like this plaintiff or I care more about myself as a trustee, so I'm going to go ahead and act. That could not have occurred here because what actually occurred, the evidence is uncontroverted, is that Wells Fargo kept saying, look, we think this case has no merit. And, in fact, the jury found the case within a case had no merit. You would recover zero damages. Wells Fargo then said, we're willing to terminate the trust and give you the case, which the plaintiff was unwilling to allow to occur. Or, alternatively, we'll just assign the claim to you, which the plaintiff was unwilling to accept. So how can that be the second prong of conscious indifference, saying we want to harm you? And, in fact, it was the plaintiff's dragging of his own leg. Let me ask you something that deals with the cross appeal. I realize it's a little out of order, but I want to ask them about it, so I want to know what your position is. There's this argument about double billing and the statute of limitations and all that, and your brief says, well, there wasn't any double billing, and then you launch into the limitations. What is your answer to the two invoices that show the same amount of money being billed to Mr. Jones and his niece? Because they split the cost. Okay, that's what I was wondering, because when I looked at that, I thought, well, that doesn't necessarily show double billing. It could. It also could show that there was a $300 bill, and they charged $150 to Mr. Jones and $150 to his niece off the same bill from somebody, and that wouldn't be double billing. Do we know? Is there evidence in the record to show us which one it was? Do we have the Cotton Bledsoe bill that would show us what the total was? I would misspeak if I said there was clear and convincing evidence on that, because it was unclear. But there is no evidence of actual double billing. Well, don't we have – isn't there a Cotton Bledsoe bill that gives – so, in other words, there's a bill from Cotton Bledsoe to the trust or to the bank, and the bank then either splits it between the niece and Mr. Jones or doesn't and double bills. So there would be an originating bill. There's a number on that line that would tell us that. Where is that bill? There are bills that were in the record. The bills are not – and that was one of our complaints on appeal as well, was that they didn't identify what cost went to what. And so, again, I would be misspeaking if I told you I could identify penny for penny, but I'm not sure where. But there's no suggestion of double billing. And, in fact, that whole claim was gone because, again, the sole issue was what occurred from the nonce. Those double bills weren't related to the House trust. They were related to other claims. I do want to get back to just the overall standard of exemplary damages in this state. The – looking toward state court cases, even an ethical conduct, which was found in the Rusty Way v. North Texas case, the court said cannot support an exemplary damage claim. Another interesting case where it was clear – Would you pull up the microphone just a little bit toward you? I'm sorry. That's good. Is that better, Your Honor? That's better, Your Honor. Thank you. The case of Gittery v. Invatel Procedures, Inc. was a case where, if you look at the facts, the conduct was just terrible. You had an unlicensed in the state of Texas insurance agent. The court found that there was no question that Gittery failed to comply with his statutory and common law duties as an insurance broker. But they still said this is not enough to support exemplary damages. The court explained that you've got causation and breach of separate issues, and you have that same situation here. An abundance of evidence in one will not overcome a dearth of evidence in the other. The decision to non-suit the Bastog House suit was purely discretionary. So even if Mr. Jones felt it should have been done sooner, which is apparently what he turned his argument to, which I'm unwilling to concede the court should have even considered, that doesn't mean there was an abuse of discretion just because he didn't like the decision. The trust itself specifically said the trustee can act as it would act on its own stead. And the trustee gave numerous reasons why the non-suit occurred. It said, first of all, when we took over this trust, we had questions. The evidence showed they hired an engineer. Counsel for the trust at that time, who is now on a court of appeals in Texas, testified. I looked at the claims and tried to speak to Mr. Jones. He was extremely litigious. It was difficult to deal with him. We determined there was no chance of success or a limited chance of success. In weighing the chance of success versus the possibility of adverse circumstances, we determined it was greatly outweighed. So, again, there can't be some sort of callous indifference or improper behavior on the part of the trustee. So this is not an exemplary damage case. I see my time is up, so I'll sit down. Yes, you've saved time for rebuttal. Thank you. I'm going to ask you to pronounce your last name so that I don't mess it up. Yes, Your Honor, it's Riccidelli. Riccidelli? Yes, sir. A little easier than it looks. Good morning, Your Honors, and may it please the court. I'm Anthony Riccidelli here on behalf of the athlete Richard Donald Jones, Jr. Many of Wells Fargo's arguments boil down to this. Had Wells Fargo been sitting in the jury box, it would have come to a different verdict. Jury verdicts, however, are not set aside lightly. A jury in this case heard three days of evidence, spent most of a fourth day deliberating, and came to a verdict. After that verdict, there was extensive briefing, and the district court entered judgment on that verdict. Let's get back to just the beginning here. I don't quite understand what your initial allegation was. I mean, I understand the words, but, I mean, was the bank, you know, out to get your client? Was the bank angry at your client? Was the bank vindictive in some way? I just don't understand. I understand. The jury came back with the verdict that it did, but what facts justified that in terms of the bank's motives or malfeasance? Certainly, Your Honor, and Judge Smith, I would answer that. If I understand what you're getting at, it's sort of what is the basis for saying that Wells Fargo was self-dealing with respect to the non-suit? Give us your opening jury argument in terms of you're going to tell the jury, you know, what it was that was so terrible that this bank did, and you're going to put on witnesses and documentation to show that. Certainly, Your Honor. I guess what I would say that the bank did in this case was self-dealing and putting its interests or its perceived interests ahead of those of Mr. Jones, its trust beneficiary. And by doing so, it ended up squandering the trust and then leaving Mr. Jones no opportunity to recover. Was there any self-dealing other than receiving fees? I understand receiving fees can be self-dealing, but, I mean, was there any way in which the bank had a conflict of interest that it was going to double deal or in some way be taking money in through the back door here? What do you mean by – Absolutely, Your Honor. I'll answer that in three parts, if I may. The first is that testimony adduced at trial showed that employees of Wells Fargo subjectively believed that if the trust ran out of money, which was imminent – this is in our brief – there was only about $1,400 in cash left in the trust at the time of this non-suit. Employees of Wells Fargo subjectively believed that had the trust run out of funds, Wells Fargo would have been on the hook for paying for the prosecution of this lawsuit had it continued. And, in fact, they may well have done that to preserve relations with a firm that, from what I gather, they used quite a bit. Randy Wilson, the trust officer at Wells Fargo, testified at trial, and this is in our brief. He said somebody has got to pay the bills, and yeah, I'm sure Wells Fargo would have picked those up and then asked about his concern about out-of-pocket expenses. When Wells Fargo non-suited the house lawsuit, Mr. Wilson said, among other things, that was the reason that we non-suited. He flat-out said that. Then secondly, Defendant Hirschman, who is the defendant in the underlying suit regarding the inspection of his house that was purchased in the 1990s, and the suit was filed in 1999, language for ten years. Defendant Hirschman filed an answer in which he threatened to seek his attorney's fees from the plaintiff, that is, Wells Fargo. Wells Fargo is the plaintiff in that case, plaintiff's attorneys, and Richard Donald Jones individually. Now, reading plaintiff as Richard Donald Jones, as Wells Fargo would have the court do, would render that first prong in that statement superfluous. Clearly, whether there was a basis in law for this or not, and I would submit that the basis would be if you're going to recover your attorney's fees under Rule 13 in Texas state court, it would be against the actual plaintiff, Wells Fargo. Wells Fargo had reason to believe, and in fact, Randy Wilson testified. This is Record on Appeal, page 4672. He said we'd be on the hook was their concern. And then thirdly, there was a suit to terminate the trust early that was ongoing. It was actually – there was a break between sessions of this when the non-suit occurred, and that supports an inference that the non-suit was done to tie up loose ends to increase the chance of Wells Fargo prevailing in the termination suit. So I think in three ways this non-suit benefited Wells Fargo. Okay, but you said the trust assets were dissipated by the suit, which is really your didn't – you won on the should have non-suited sooner. You just argued the shouldn't have non-suited. And so it does seem like Wells Fargo has absolutely no way to satisfy you or your client more accurately because whatever they do, they're going to get sued and lose. If they non-suit, then they shouldn't have non-suited. If they don't non-suit, they should have non-suited. That's your argument, and I don't understand, number one, how that can give rise to exemplary damages, and number two, how that can even give rise to an actual case. Well, and Judge Haynes, I would submit that this is not a situation where Wells Fargo had no way out. I mean the way this unfolded at trial, we came in complaining about this non-suit, and Wells Fargo argued extensively not that they had acted properly the whole time, which would – one would have expected Wells Fargo to come in and say when we filed the lawsuit in 1999, we believed it to have merit, and changing circumstances caused us to change that evaluation and non-suit it. What Wells Fargo pointed to during trial was that the contract that was signed with Defendant Hirschman in the underlying lawsuit, signed in 1995 and obviously had not changed since it was signed, had because of this seven-day notice period, because of the scope of work, had always barred this lawsuit and that the lawsuit had never been – Well, Wells Fargo isn't the one that filed the suit. Chase did. So Wells Fargo inherits this thing and inherits apparently a trust beneficiary who's, you know, let's just say challenging to deal with, and who doesn't want to take the trust back, who doesn't want to consent to a non-suit, so they keep trying to pursue the case, and they finally say, you know, we're just not getting anywhere here. I mean I have certainly seen cases non-suited after several years. That's not unusual. So that doesn't mean that the original case was invalid or the original case was wrongfully filed. It just means eventually you realize time to cut your losses. And why isn't that totally proper, particularly given your – the way you're hedging them in with the you non-suited too soon, you non-suited too late? And, Your Honor, I would say, first of all, if Wells Fargo believed that when it took over the trust in 2001 that this lawsuit lacked merit, the right thing to do would have been – the thing acting in the beneficiary's best interest to do would have been to have non-suited it then. If it had merit – and Wells Fargo, by the way, they inherited this lawsuit. They did not file the original petition, but they did three separate times ask the court to retain it on the docket when it came up for dismissal for want of prosecution. So Wells Fargo said this is a case that deserves to be on the docket. This is a case that is worthy of that and represented in that sense that the case had merit. But, I mean, litigation is not an exact science. I don't know if you've ever had to do the settlement analysis and decision trees for clients like as if this could be scientifically done. And I always found that to be very difficult, and I would tell the client you're trying to make a science out of something that's not a science. So I agree, looking back on it, maybe they could have done better, but that is not the equivalent of a breach of fiduciary duty, which is a very strong charge to make against a trustee. And then to add on at exemplary damages, I mean, in all honesty, I've seen a lot of cases involving very significant, crazy conduct that didn't rise to the level of exemplary damages under Texas law, including one where a man died and I was reversed as a trial judge for entering judgment on exemplary damages. And, Your Honor, my response to that would be that while certainly not as serious as the death, Texas law does recognize that where there is an evil motive and – or a malicious, a self-dealing motive. And, in fact, there is case law saying that self-dealing gives rise to exemplary damages, that these facts, the testimony that was adduced at trial that showed that when Wells Fargo made the decision to non-suit this case, it was thinking about what was best for Wells Fargo and not what was best for the trust beneficiary. I think that shows self-dealing, and then financial ruin is something that gives rise to exemplary damages. And this trust, which started out – and I believe this is in the briefing – started out quite well endowed. Normally over time, things that are well managed increase in value. This trust that started out with – I can't remember the exact number, but some number in the low hundreds of thousands in it ended up with a negative cash balance and a house that was uninhabitable that was valued somewhat arbitrarily at $101,660. So this did cause financial ruin for Mr. Jones. And I think – It did cause financial ruin for Mr. Jones? I mean what evidence is there that Mr. Jones himself is financially ruined? You're saying the trust was dissipated by this lawsuit, and we've discussed that, but what about Mr. Jones? What evidence is it that Mr. Jones is now out on the street or living under a bridge or something of that nature? Mr. Jones testified at trial about how when he had to move out of the house at one point he lived in a garage, lived in a camper trailer. He went through – again, this does not compare with the death that Your Honor mentioned, but went through some difficult living circumstances, and I think that shows – And what was the timeframe of that? Your Honor, I apologize. I can't recall exactly off the top of my head. I'd be remiss to hazard a guess, but it was during the period of this litigation, the underlying litigation. And I would submit that because of the self-dealing and because whatever gripes Wells Fargo may have felt it had in the trustee-trust beneficiary relationship, Randy Wilson of Wells Fargo testified. He said that was the reason we non-suited. He testified in no uncertain terms that Wells Fargo was trying to avoid losing its own money and therefore did this non-suit. And on the Catch-22 that Your Honor has mentioned, this was really an argument that Wells Fargo made. So we come in, and we're saying this non-suit was improper. I think the pleadings are wide enough to put Wells Fargo on notice of any conduct having to do with this case regarding the non-suit. But Wells Fargo came in and said that this had been improper the whole time, that a contract that had not changed since 1995 was the reason to non-suit in 2009. And I think that that showed – and by the way, this was after the case had been pending for ten years. This was a month before a trial setting and without even attempting the court-ordered mediation. So this was a situation where – Well, a case can go on for ten years and nothing can happen. I inherited a few of those when I started on the state court. You open up the file and nothing had happened. And I know not all discoveries file, but you would find out nothing that had happened because you set the case for trial and everybody freaks out because nothing's happened. So the length of the case pending doesn't tell me at what juncture were the monies being spent that sort of dissipated the trust. Now, when you're on the eve of a mediation that you have to prepare for, a trial you have to prepare for, you're going to start dissipating some money. I agree. Whoever it may be, you're going to have to pay it. But it could have sat around, and if it's being set for DWOPs, dismissals for warrant of prosecution, probably nothing is happening. So it's not costing anybody anything as it's sitting there, except the judge is getting tired of it sitting on the docket. And, Your Honor, there was evidence – this gets into the fee segregation issue that Wells Fargo has brought up – two responses on that. There was evidence that specifically showed this cause number, 23132, and showed copious attorney's fees on this lawsuit. In addition, any difficulty in segregating between this lawsuit and another lawsuit has to do with recordkeeping that was solely within the control of Wells Fargo. So it's analogous to a situation where a trustee commingles funds, and the trust beneficiary has no way to untangle that web. So that's why you're saying that's not time-barred because you had no way of knowing. Is that right? Well, there are a number of reasons it's not time-barred, and these are all covered in the briefing. But I think the biggest one is that the non-suit occurred April 15, 2009. The suit was filed less than four years later on March 28, 2013. So the legal injury, the non-suit, occurred within the limitations period. And even if we were to look at other calculations, I think that when your trustee is saying, let's keep this on the docket, let's retain this on the docket, filing these motions to retain on the docket, that would certainly cause a layperson to say, okay, this is a meritorious case that needs to be retained on the docket. And ultimately, that is what happened. And explain to us – you're contending that there's a fact issue as to the double bill, and is that right? Yes, Your Honor. Tell us where we – you don't have to give an exact page, but tell us what's in the record that would indicate that there is, in fact, a factual dispute that would defeat judgment on the double bill. Certainly, Judge Smith. It's the evidence that was discussed when Mr. Moses was up here, the record showing billing of the same amounts for the same activity on the same date to two different people. I believe this is the first time that we've discussed – By the same person. By the same person, yes, indeed. And I believe this is the first time that the idea that these costs were split has been mentioned in this case. I mean, that's the first thing that struck me when I looked at it. I thought, well, I've gone to dinner and paid the bill, and we've all agreed to split it, and then I would charge Judge Smith $50 and Judge Juneau $50 for the exact same bill and all of that, but that's not double billing because the whole bill was $150. So you haven't – to me, by pointing to that, you haven't shown that that's a double bill as opposed to a split bill. And, Your Honor, I would say at the summary judgment stage, which is where this was dismissed, I think that that gives rise to an inference of double billing. And if there's evidence that it was a split bill and not a double bill, that evidence, to my knowledge, is not in the record. And so I don't think dismissal at the summary judgment stage is appropriate. Perhaps if it were remanded and that evidence were put in the record, maybe that would be a different story. But to my knowledge, that evidence is not in the record. So I would just conclude by saying on the exemplary damages… You can have 30 seconds to conclude. Thank you, Judge Smith. I would conclude by saying that the briefing is extensive, and I think we can pretty well rest on our brief. But the evidence in this case gave rise to exemplary damages. There was evidence, a really firm admission of self-dealing and Wells Fargo putting its interest over the trust beneficiary. And I think that's why exemplaries are supported in this case. And thank you all for your time. Thank you, Mr. Riccardelli. Mr. Lawretson. May it please the Court and counsel, my name is David Lawretson, and I'm here on behalf of J.P. Morgan Chase Bank. I'm here today on a very discreet issue. I believe it is very limited in scope. There's a little bit of confusion in the briefing over what exactly we're here about. But it's my understanding, to give a little bit of background, J.P. Morgan Chase got summary judgment on Mr. Jones' first original petition back in September of 2014. At the same time that the Court granted summary judgment, the Court also granted Mr. Jones' leave to file an amended pleading to clarify issues that had already been decided and to clarify what were new issues that had arisen within the limitations periods. That was done, and at that point, J.P. Morgan filed a second motion that was a 12C motion, or in the alternative, another 12B6 summary judgment motion, and received that dismissal in April of 2015. Now, when Jones filed his notice of appeal as to J.P. Morgan Chase, he essentially gave notice of appeal for both of the orders. However, the actual briefing was really only on the 12C motion and only on the very discreet allegation by Mr. Jones that J.P. Morgan Chase failed to transfer mineral interests to Mr. Jones that should have properly been transferred to him. And so with that respect, I want the Court to keep in mind some very important dates, I think. To begin with, mineral interests at issue first appeared as part of an asset listing in a guardianship for Mr. Jones' grandmother, Sweetie Boyle, in 1994. Then in 2000, in response, at a scouting conference, Mr. Jones filed in the estate of Sweetie Boyle. She had passed away by this time. Again, allegations were made of the exact same allegation of failure to transfer mineral interests, and at that time, Mr. Jones first pled the discovery board, which is what the bulk of the dispute here between J.P. Morgan and Mr. Jones is now. And the most important date, I think, is in April of 2001, J.P. Morgan Chase sold its trust apartment to the successor interest, Wells Fargo. So J.P. Morgan Chase has not administered this trust since April of 2001. And going back to the 12C motion itself, I'd also like to point out that these are new pleadings as represented by Mr. Jones. In his new amended petition, he states that the trusts should have been—the mineral assets should have been transferred upon the expiration of the trusts, which expired in 2010, December 31, 2010. And so by the language of the pleadings, he's alleging that J.P. Morgan Chase should have been responsible somehow for transferring trust assets in 2010 when it hadn't administered the trust since 2009. And so what we've got here is an abstention of limitations, affirmative defense that the court accepted, and then a discovery board claim. J.P. Morgan Chase never identifies how J.P. Morgan supposedly—Mr. Jones never identifies how J.P. Morgan supposedly hid these publicly filed documents from him. And it doesn't matter whether he subjectively believed it, whether it was going to be expensive for him to go look for it. The Texas Supreme Court has dealt with this issue extensively, and the discovery rule looks to categories. These are mineral interests, and the court has held repeatedly that mineral interests are not in the category of publicly filed documents. They're not in the category of inherently undiscovered. Now, one thing that did come up in the briefing was judge cites an exception to that, the duty of a litigant and diligent in finding his injuries, and there's a fiduciary duty exception. There's no question that there was a fiduciary duty when J.P. Morgan Chase was the administrator of the trust. But the same courts that, in the same cases that Mr. Jones identifies in his briefing, also go farther to say that exception ends when the fiduciary relationship ends. And there's no question that the fiduciary relationship ended 16 years ago after Mr. Jones first pled discovery rule on these types of mineral interests. So in brief, I think it's very clear that the discovery rule does not apply to defeat the statute of limitations defense, and we ask that the court uphold the trial court. Thank you very much. Thank you, Mr. Lawrenson. Mr. Moses, you've saved time for rebuttal. Thank you, Your Honor. Mr. Jones's position is basically Ipsy-Dixie, and I apologize if my Texas plain rule isn't pretty sane. That's the way I pronounce it. He says you've got to ignore an elevated standard. You've got to ignore the fact that every Texas case that's ever addressed, punitive damages, says you have to have extraordinary damages. You have to ignore the fact that there's no evidence of financial ruin. To the contrary, there's evidence that another trust existed. We couldn't get into the dollar amount because, of course, in a motion to eliminate all financial worth was limited out, but there is no question that there was this trust that Mr. Lawrenson just mentioned. And there's no question that under both the law and the actual testimony, the trustee was not getting any sort of benefit. To the contrary, the trustee said, look, we think that there's some concerns here. It didn't say we think this is a valid lawsuit, therefore we're going to continue to ask the court not to dismiss it. It said we think there's concerns. Take the lawsuit over. Mr. Jones says I'm not going to take the lawsuit over. The case was pending for over 10 years. Mr. Jones's counsel suggested a copious, and that was the term he used, amount of money spent in this 10 years. Well, there was $33,658 in total fees. We don't know that they were all actually on this bill. Over the whole 10 years? Yes, Your Honor. Wow. I could build that in a month. And we don't know what portion of that was related to the time period when Chase filed the suit, which would have been probably the predominant portion. We don't know what point it could have been stopped. And, again, this is a hedge I would tell you is argued, and Justice Haynes, you basically pointed that out. So you shouldn't have non-suited the suit at all. Well, we said we don't want to non-suit it if you want it. Take it over. Alternatively, we're going to non-suit it because there's not enough money to pursue it, and we think the risks greatly overwhelm the possibility of a recovery. And there was no risk to Wells Fargo. The plaintiff was Wells Fargo as trustee. Well, then how do you explain this testimony by Mr. Wilson? Your Honor, if you actually look at our reply brief on page 11, paragraph 20, that's not the testimony, and it's the record reference to 4310, 4355, and there's several others. And I can quote what he actually said, and this was the question, and I'm truncating it because of my time. The question was asked, so just because Wells Fargo is the trustee, does that mean all of a sudden, as a beneficiary, you have an unlimited amount of money? His answer was, it does not mean that at all. And the prior officer of the bank that served as trustee, Mr. Tandy, testified similarly. No one subjectively thought the bank's dollars would ever come on the line. To the contrary, Wells Fargo was not the plaintiff. So what would happen if the case had had some merit, you're proceeding on, getting ready for trial, and then there's just no money left in the trust, and here we are, and the trial's set tomorrow. What's supposed to happen? How does the lawyers get paid? How does the case proceed? It doesn't. Both the property code and the trust agreement itself, and we've cited this, and I've left my remainder of my briefing on my table because of my time limit. But we've actually cited both the property code and the trust agreement, and it basically says— So essentially they just wouldn't have shown up that morning? A trustee doesn't all of a sudden have its money put on the line because it accepts a trustee position. And there's no evidence that—I think I said this—that the financial ruin, and that was still even though— What about this stuff about living in the van or whatever? Well, the evidence was he lived in a trailer home on the property because he took care of dogs on the property, and the property was in Bastrop, which having Texas judges, you all know, it actually did become invaluable. The House itself may have had concerns. I've seen my time is up. You can finish answering the question. The House itself may have had concerns, but it wasn't a House that Wells Fargo or even Chase selected. It was one the plaintiffs selected to ask the trustee to purchase, and concerns are shown in the record, many of which were the result of his trying to make improvements. I appreciate the Court's time. Thank you, Mr. Moses. Your case is under submission.